Filed 1/12/16  Chavet v. U.S. Bank CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SELAH JOI CHAVET, | B257277 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC505161) |
| v. | |
| U.S. BANK, N.A., as Trustee, etc., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Malcolm H. Mackey, Judge.  Affirmed.

Miltner & Menck, William L. Miltner, Robert C. Harvey for Plaintiff and Appellant.

Houser & Allison, Eric D. Houser, Marc W. Thomas, Joshua R. Mino for Defendant and Respondent U.S. Bank N.A., as Trustee, etc.

Fidelity National Law Group, J. Walter Gussner for Defendant and Respondent Commonwealth Land Title Insurance Company.

_____

Plaintiff Selah Joi Chavet defaulted on a loan secured by a deed of trust. She sued the lender and others for damages and equitable relief, but filed no opposition to their demurrers. The trial court dismissed the case. On appeal, plaintiff fails to show how she could amend her pleading to state a claim. We affirm.

## ALLEGATIONS[1]

Plaintiff purchased real property in Pasadena in 1992 (the Property). In 2006, she refinanced with Argent Mortgage Company (Argent) and obtained a new loan for $740,000 secured by a first trust deed on the Property. Plaintiff believed that when she refinanced, three existing trust deeds on the Property (for $64,000, $119,800 and $192,195) would be extinguished by the close of escrow. An exhibit to the FAC shows that plaintiff authorized repayment of the largest of the three loans, all of which were owed to an individual named James Jimenez.

Plaintiff had trouble making payments, and in December 2008 obtained a loan modification through Litton Loan Servicing (Litton). A year later, plaintiff sought a second modification. Her monthly payments were reduced from $5,793 to $4,272.

In January 2009, Argent assigned its interest in plaintiff's loan to defendant U.S. Bank to hold for an entity called "CMLTI Asset Backed Pass-Through Certificates," a securitized trust formed under Delaware law in 2007. One week later, U.S. Bank recorded a substitution of trustee, naming NDEx West, L.L.C. Plaintiff claims that both of these transfers were void.

In July 2010, a notice of default was recorded. As of November 2011, plaintiff owed $875,467 on her loan. A notice of trustee's sale was recorded in June 2012.

Plaintiff declared bankruptcy in October 2012, postponing the sale. Her first bankruptcy petition was dismissed. In April 2013, plaintiff filed a second bankruptcy petition, to stop the trustee's sale. Her second petition was dismissed in August 2013. Plaintiff alleges that "the matter has not been re-set for trustees sale."

---

**1** The allegations are taken from plaintiff's first amended complaint (FAC).

## PROCEDURAL HISTORY

The record on appeal does not contain the complaint filed in April 2013. When defendants demurred, plaintiff filed a FAC against defendants U.S. Bank, Litton, Ocwen Loan Servicing (Ocwen), and Commonwealth Land Title Insurance Company (Commonwealth), among others, and the demurrer was taken off calendar. Plaintiff admits that "the FAC did not differ significantly from the original complaint."

In the FAC, plaintiff seeks declaratory relief based on the allegedly invalid transfers involving her loan, and damages for breach of contract because the three outstanding liens on the Property were not extinguished when plaintiff refinanced in 2006. Plaintiff claims that defendants were negligent because their conduct did not meet the standard of care. Although the Property was not sold, plaintiff makes a claim of wrongful foreclosure and seeks to cancel instruments. She asserts a claim of unfair business practices, and seeks injunctive relief.

Defendants demurred to the FAC. Absent any opposition from plaintiff, the trial court inferred that the demurrer was meritorious. It sustained the demurrer without leave to amend and dismissed the action with prejudice. This appeal was filed 59 days later.

## DISCUSSION

Plaintiff makes no argument in support of the operative pleading, a concession that the trial court properly sustained demurrers to the FAC. She seeks to allege new facts and new causes of action; in short, a "mulligan" on her poorly conceived lawsuit.

Plaintiff amended her pleading in 2013, when defendants demurred to the original complaint. She did not seek leave to amend from the trial court when defendants demurred to the FAC. In fact, she did not oppose the demurrers at all. Plaintiff blames her former attorney (who substituted out of the case) for failing to inform her of the demurrers. The inadequate appellate record does not bear this out, as it contains only the FAC and the court's ruling. She did not ask the trial court to vacate the dismissal owing to mistake, inadvertence or neglect arising from her unawareness of the pending demurrers, yet she invokes Code of Civil Procedure section 473 on appeal. By appealing the dismissal—instead of seeking relief from the trial court for excusable neglect—

3

plaintiff gives the unfavorable impression of dragging out her case to avoid foreclosure, akin to her fruitless attempts to use bankruptcy to avoid foreclosure.

A plaintiff may request an amendment for the first time on appeal, even without a request to amend below. (Code Civ. Proc., § 472c, subd (a); *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746.) The burden of proving a reasonable possibility that defects can be cured "is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) Leave to amend should not be granted if it would be an exercise in futility. (*Long v. Century Indemnity Co.* (2008) 163 Cal.App.4th 1460, 1467-1468.)

Plaintiff proposes to allege in 2006, Argent offered her a loan, then, at the last minute, presented her with documents for a loan with a higher interest rate and higher monthly payments. Plaintiff "was manipulated into entering" the loan transaction. During negotiations, plaintiff discovered that two paid-off loans secured by trust deeds on the Property remained as encumbrances. Commonwealth promised that it would have the liens removed before the close of escrow. Plaintiff believed that the matter was settled.

In 2008, plaintiff obtained a modification through loan servicer Litton. Financial difficulties in 2010 caused plaintiff to seek yet another loan. At the time, she learned that the three junior liens held by James Jimenez (for $64,000, $119,800 and $192,195) had not been removed from her title. Plaintiff was unable to obtain loan commitments or sell the Property, due to all the encumbrances.

Litton recorded a notice of default in July 2010, and represented that it froze all activity on the loan while they were attempting to clear up title. Plaintiff did nothing because she could not refinance until the title problems were resolved. In November 2011, plaintiff was informed by the new loan servicer, Ocwen, of her overdue indebtedness, which included payments accruing while the loan was supposedly frozen.

The three junior trust deeds were finally removed on December 29, 2011, when the beneficiary executed requests for reconveyance. Plaintiff was unaware of the reconveyances, so she failed to refinance her loan or sell the Property. A notice of trustee's sale was recorded in June 2012, which prompted plaintiff to seek modifications

4

from the lender, without success. Plaintiff declared bankruptcy twice to stop the trustee's sale. Both petitions were dismissed. Plaintiff filed this lawsuit in April 2013.

Plaintiff contends that she can state claims for fraud or misrepresentation against Commonwealth, for its promise to "remove the two junior trust deeds from the record title." As we shall see, plaintiff could not reasonably reply upon such a promise, because none of the defendants had the power to "remove" existing third party liens.

A trust deed beneficiary is obliged to execute and deliver to the trustee "the original note, deed of trust, request for a full reconveyance, and other documents as may be necessary to reconvey, or cause to be reconveyed, the deed of trust," within 30 days after the debt is satisfied; the trustee, in turn, is obliged to execute and record the reconveyance within 21 days. (Civ. Code, § 2941, subd. (b)(1).) If the trustee fails to record the reconveyance, the debtor may make a written request to the beneficiary to do so. (Civ. Code, § 2941, subd. (b)(2).) As a last resort, the title insurer may prepare and record a release of the obligation. (Civ. Code, § 2941, subd. (b)(3).)

None of the defendants in this case are beneficiaries, trustees, or title insurers of the junior liens. The beneficiary was James Jimenez, as alleged in the FAC. Plaintiff does not identify the trustee in her brief, but documents attached to the FAC reveal that the trustee was First American Title Company.

Plaintiff did not avail herself of her statutory remedies for clearing title. The objects of her ire should have been the trust deed beneficiary James Jimenez (or his estate) and First American, who held plaintiff's notes and trust deeds. Plaintiff has not shown that defendants—who are strangers to the junior liens—had any right to force Jimenez and First American to reconvey trust deeds signed by plaintiff. Defendants were not parties to plaintiff's prior financial transactions and plaintiff does not claim that the problem-causing instruments were in defendants' possession.

The FAC indicates that defendants assisted plaintiff in preparing "necessary paperwork" to obtain reconveyances. If Jimenez and First American refused to sign or record the paperwork, then plaintiff's dispute lies with them. Plaintiff chose to sit on her rights for years, but now blames defendants for the failings of third parties. Plaintiff's

5

claims of fraud or misrepresentation fail as a matter of law. Plantiff could not reasonably rely on defendants to execute reconveyances on third party liens.

Plaintiff wishes to allege that when the notice of default was recorded in July 2010, defendants represented that the loan was frozen. The notice of default clearly states that plaintiff must pay all amounts in default, unless plaintiff and the trust deed beneficiary "mutually agree in writing" to provide additional time for payment. Plaintiff's promissory note states, "Oral agreements, promises [to] forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. . . . . Any subsequent agreement [ ] regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable."

A lender's agreement to forbear comes within the statute of frauds and must be in writing: a gratuitous oral promise is not enforceable. (*Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 673; *Karlsen v. American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 120-121.) Plaintiff does not allege that defendants signed a written agreement to defer her obligations, or that she paid consideration to stop principal and interest from accruing. Her claim of a gratuitous oral promise cannot succeed.

Plaintiff asserts that Ocwen negligently failed to advise her that reconveyances were recorded on the junior liens. As previously discussed, it was plaintiff's duty to exercise her right under Civil Code section 2941 to force the trust deed beneficiary, Jimenez, or the trustee, First American, to record the reconveyance paperwork.[2]

Plaintiff contracted for a loan that exceeded her means, and defaulted on it. She has apparently lived at the Property for over five years without paying her mortgage, despite ample opportunity over the years to cure the default. Plaintiff's desire to continue

---

[2]     Plaintiff posits more possible claims—for fraudulent business practices, interference with contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel—without any citation of legal authority. Points made without adequate legal argument or citation to authorities require no review. (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 611.)

living on the Property for free must come to an end, as she cannot state a claim for wrongdoing against defendants.

## **DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


                                        BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.